# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DAWN M. HINDS,<br><br>            Plaintiff,<br>vs.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>            Defendant. | No. 18-CV-3065-CJW-MAR<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

_____

## I. INTRODUCTION

This matter is before the Court on a Report & Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge. (Doc. 16). Judge Roberts recommends that the Court affirm the decision of the Commissioner of Social Security ("the Commissioner") denying plaintiff Dawn M. Hinds' ("claimant") application for Disability Insurance Benefits under Titles II of the Social Security Act, 42 U.S.C. §§ 1381, et. seq. ("the Act"). (*Id.*, at 1). Claimant filed a timely objection on February 17, 2020. (Doc. 17). On March 2, 2020, the Commissioner filed a response to claimant's objection, in particular claimant's reliance on the Third Circuit Court of Appeals' decision in *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). (Doc. 18). On March 2, 2020, claimant also filed a notice of additional authority, providing citation to a decision from the District of Minnesota and from the Southern District of Iowa. (Doc. 19).

## II. PROCEDURAL HISTORY

On July 23, 2015, claimant applied for disability benefits. (AR 10).[1] She alleged she was disabled because of depression, anxiety and obesity, and claimed an onset date of June 20, 2010. (AR 176, 212). In 2016, the Commissioner denied claimant's application originally and upon request for reconsideration. (AR 98-101, 106-09). On November 13, 2017, Administrative Law Judge ("ALJ") Gregory Smith held a hearing on claimant's application. (AR 28-65). On February 22, 2018, the ALJ found claimant was not disabled. (AR 10-20). On September 24, 2018, the Appeals Council denied claimant's appeal of the ALJ's decision. (AR 1-5). On November 26, 2018, claimant filed her complaint with this Court. (Doc. 3). By August 5, 2019, the parties had fully briefed the issues. (Docs. 12-14). The Court deemed the case ready for decision and referred it to Judge Roberts for an R&R. (Doc. 15). On February 3, 2020, Judge Roberts issued an R&R recommending that the Court affirm the Commissioner's decision. (Doc. 16).

In her brief, claimant argued the ALJ erred in three ways. First, claimant argued the ALJ erred by failing to provide good reasons for discounting the weight afforded to claimant's treating psychiatrist. (Doc. 12, at 3-7). Second, claimant argued the ALJ erred by failing to provide good reasons for the weight he afforded to opinions of an examining physician. (*Id.*, at 7-10). Third, claimant argued the ALJ's denial of benefits was not supported by substantial evidence. (*Id.*, at 10-13). Claimant also challenged the validity of the ALJ's appointment under the Appointments Clause. (*Id.*, at 13-20).

---

[1] "AR" cites refer to pages in the Administrative Record.

### III. THE REPORT AND RECOMMENDATION

Judge Roberts addressed each of claimant's argument in his R&R. First, Judge Roberts found that the ALJ properly supported his decision to give claimant's treating psychiatrist's opinion little weight. (Doc. 16, at 7-24). In reaching this conclusion, Judge Roberts considered: (1) the length, frequency, nature, and extent of the treatment relationship; (2) the degree to which the psychiatrist's opinions were supported by the medical record; (3) whether the opinions were consistent with other evidence; and (4) the psychiatrist's specialization. (*Id.*). Second, Judge Roberts similarly found that the ALJ properly supported his decision to afford the examining physician's opinion little weight, considering again the same four factors. (*Id.*, at 24-29). Third, Judge Roberts also found that substantial evidence supported the ALJ's finding that claimant was not disabled. (*Id.*, at 29-38). Last, Judge Roberts found that claimant failed to timely raise her Appointments Clause argument challenging the ALJ's authority. (*Id.*, at 38-41).

### IV. CLAIMANT'S OBJECTIONS TO THE R&R

Claimant objects to each of Judge Roberts' conclusions and recommendations. Claimant argues that Judge Roberts' analysis of whether the ALJ erred in weighing the opinion of her treating psychiatrist is flawed because Judge Roberts substituted his own evaluation of the record instead of addressing the ALJ's expressed rationale and amounts to a harmless error analysis. (Doc. 17, at 2-3). Claimant makes the same arguments as to Judge Roberts' analysis of whether the ALJ erred in weighing the opinion of the examining physician. (*Id.*, at 3-4). Claimant argues that Judge Roberts erred in finding substantial evidence supported the ALJ's determination that claimant is not disabled because Judge Roberts "fail[ed] to recognize that the ALJ's statements concerning the old PRT-F findings . . . do not translate RFC-type limitations." (*Id.*, at 4-5). Finally, claimant argues that Judge Roberts erred in finding she was untimely in raising her Appointments Clause challenge because he did not sufficiently discuss a decision from

the Third Circuit Court of Appeals and his dismissal of claimant's futility argument is contrary to law. (*Id.*, at 5-8).

## V. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Court must affirm the Commissioner's decision "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the administrative law judge, but [it does] not re-weigh the evidence[.]" *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citation omitted).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citation omitted), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently[.]" *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

5

Any portions of an R&R to which no objections have been made must be reviewed under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error."). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

## VI. ANALYSIS

### A. The Weight Afforded Claimant's Treating Psychiatrist's Opinion

Claimant first argues that Judge Roberts erred by conducting his own analysis of the record to determine whether there were grounds for affording her psychiatrist's opinion little weight instead of analyzing the sufficiency of the ALJ stated reasons. (Doc. 17, at 2-3). Claimant's treating psychiatrist, Dr. Bryan Netolicky, diagnosed claimant with recurrent major depression, generalized anxiety disorder, and borderline personality disorder. (AR 18). Dr. Netolicky opined that claimant "has no useful ability to function in the abilities to work in coordination with or proximity to others without being unduly distracted, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." (*Id.*). Dr. Netolicky also opined

6

that claimant "would likely be absent more than four days per month due to her impairments or treatment." (*Id.*). Finally, Dr. Netolicky opined that claimant's mental impairments "long preceded their initial visit in June 2011[.]" (*Id.*). The ALJ afforded "little weight" to Dr. Netolicky's opinions, stating that "his notes and the overall record do not support such extreme limitations." (*Id.*). The ALJ concluded that claimant was "limited to performing simple, routine tasks" with only "occasional interaction with the public" and that she was "limited to simple, work-related decisions." (AR 14).

In assessing whether the ALJ provided an adequate explanation for the weight he afforded to Dr. Netolicky's opinion, Judge Roberts addressed the ALJ's express rationale: that Dr. Netolicky's notes and the overall record did not support his opinions. It follows, then, that Judge Roberts' R&R thoroughly examined Dr. Netolicky's notes and the medical record as a whole. Claimant states that Judge Roberts "review[ed] records and analyz[ed] factors the ALJ likely did not[.]" (Doc. 17, at 2). Claimant is asking this Court to speculate that the ALJ did not review the medical record as a whole and analyze the pertinent factors. The Court will not do so. To the contrary, courts presume that ALJs properly discharged their official duties. *See, e.g.*, *Wilburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (applying the presumption of regularity to conclude the ALJ discharged his official duties as described). An ALJ need not discuss every piece of evidence submitted, and the failure to cite specific evidence does not mean the ALJ did failed to consider it. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). The ALJ said he considered the overall record and so the Court will presume he did so.

Given that the ALJ considered the entire record, Judge Roberts did not rely on records or consider factors the ALJ did not consider. Rather, Judge Roberts reviewed Dr. Netolicky's treatment notes and the medical records just like the ALJ to see if they failed to support Dr. Netolicky's opinions as the ALJ concluded. Having independently reviewed the record, Judge Roberts found that the ALJ stated good reasons for

7

discounting the weight the ALJ afforded to Dr. Netolicky's opinion. Upon its own review of the same records, the Court finds no error in Judge Roberts' analysis of those records and his conclusion that the ALJ provided a good reason for affording Dr. Netolicky's opinion little weight.

Thus, the Court overrules claimant's objection to this part of Judge Roberts' R&R.

### B. *The Weight Afforded the Examining Physician's Opinion*

Dr. Taylor opined that claimant "can rarely stand and walk, and can occasionally sit," "would need the ability to sit when necessary," and "can rarely to occasionally stoop and bend" but "never crawl . . . rarely kneel," "never walk on uneven surfaces" and "should avoid lifting more than 20 to 30 pounds on a rare basis." (AR 17). The ALJ afforded this opinion "little weight" for several reasons. (*Id.*). The ALJ noted that the opinion was "not supported by Dr. Taylor's examination of the claimant." (*Id.*). The ALJ also noted that the opinion "does not provide functional limitations" and that the record does not support the conclusion that "claimant can rarely stand and walk." (*Id.*). The ALJ noted that the record showed claimant walked for exercise. (AR 17-18). Finally, the ALJ discounted the opinion because Dr. Taylor conducted the examination and rendered his opinion "after the claimant's date last insured." (AR 18). The ALJ included the following physical limitations in claimant's RFC: she could perform light work, "except she could only occasionally climb ramps and stairs," "never climb ladders, ropes, or scaffolds," and could "occasionally stoop, kneel, crouch, and crawl." (AR 14).

In his R&R, Judge Roberts evaluated the reasons the ALJ gave for discounting Dr. Taylor's opinion. Judge Roberts noted that Dr. Taylor saw claimant on a single occasion and concluded this factor did "not weigh in favor of giving the opinion more than a little weight." (Doc. 16, at 26). For the same reason, Judge Roberts found that the nature and extent of the treatment relationship between claimant and Dr. Taylor did

8

not support more than a little weight. (*Id.*). In light of the ALJ's conclusion that Dr. Taylor's examination did not support the limitations, Judge Roberts reviewed the examination notes and reached the same conclusion as to the extreme lifting restrictions. (*Id.*, at 26-27).

Judge Roberts did find "puzzling" the ALJ's explanation that Dr. Taylor's failure to provide functional limitations justified giving his opinion little weight. (*Id.*, at 16). Having reviewed Dr. Taylor's records, Judge Roberts concluded that the ALJ erred and found that Dr. Taylor did provide functional limitations. Thus, Judge Roberts' rejected this ground as an explanation for affording Dr. Taylor's opinion little weight. (*Id.*). Similarly, Judge Roberts found the timing of the examination and opinion not to be a good reason for discounting the weight of Dr. Taylor's opinion. (*Id.*).

Finally, Judge Roberts considered the ALJ's explanation that he discounted Dr. Taylor's opinion because claimant walked for exercise. (*Id.*, at 28-29). Judge Roberts found that the medical records as a whole showed that claimant did walk for exercise and that they did not support the extreme walking limitations reflected in Dr. Taylor's opinion. (*Id.*).

Thus, even though Judge Roberts rejected two of the ALJ's proffered reasons for discounting Dr. Taylor's opinion, Judge Roberts found that the remaining reasons were sufficient for giving Dr. Taylor's opinion little weight. The Court disagrees with claimant's assertion that Judge Roberts' R&R expanded on the ALJ's rationale. (Doc. 17, at 4). Rather, the Court agrees with Judge Roberts that the ALJ's proffered rationale, when considered in its entirety, provided good reason for affording Dr. Taylor's opinion little weight.

Thus, the Court overrules claimant's objection to this part of Judge Roberts' R&R.

9

## C. *Substantial Evidence*

Claimant objects to Judge Roberts' R&R, concluding that the ALJ's findings at step five were supported by substantial evidence. Claimant asserts that the "R&R errs in failing to recognize that the ALJ's statements concerning the old PRT-F findings—used for determining whether a mental impairment is severe, and if severe, a Listings-level impairment—do not translate RFC-type limitations." (Doc. 17, at 4). Claimant argues that the ALJ's analysis can only mean that claimant "was more limited than a limitation to '3-4 step tasks.'" (*Id.*). Claimant further reasons that "[g]iven the ALJ stated he intended to find limitations greater than those found by the agency psychological consultants, the ALJ meant to limit [claimant] to Reasons Level 1 tasks as argued in briefing." (*Id.*, at 5).

Claimant's objection is vague and confusing, but upon reading her initial brief her argument is more apparent. Claimant focuses on language in the ALJ's decision in which the ALJ states that "the overall evidence, including evidence received at the hearing level, supports greater limitations such as those provided in the residual functional capacity." (AR 17). Because in the immediately preceding sentence the ALJ noted the consultants' opinion that claimant is capable of completing 3-4 step tasks on a sustained basis, claimant reasons that the ALJ must have intended to limit claimant to only 1-2 step tasks. The ability to perform only 1-2 step tasks equates to only Level 1 reasoning jobs. According to claimant, it then follows that when the vocational expert identified jobs that required at least Level 2 reasoning, the ALJ erred in not finding claimant disabled.

In addressing this argument, Judge Roberts concluded that claimant took the ALJ's quote out of context. Judge Roberts explained that taken in proper context the ALJ indicated that the consulting psychologists' entire opinions, not just those related to whether claimant was capable of completing 3-4 step tasks on a sustained basis, support greater limitations than those opinions supported. (Doc. 16, at 30). Judge Roberts

concluded that claimant's interpretation of the ALJ's decision "would result in an absurd reading of the final RFC because it would require the court to impute a 1-2 step limitation that is clearly not included." (*Id.*). The Court agrees with Judge Roberts' analysis and finds that claimant is asking the Court to find a limitation that the ALJ did not explicitly or implicitly include.

Having found that the ALJ did not limit claimant to Level 1 reasoning, Judge Roberts then concluded, correctly, that the ALJ provided proper hypothetical questions to the vocational expert. Judge Roberts further concluded that the ALJ was able to rely on the vocational expert's opinion that there were jobs available that claimant could perform despite her RFC. Judge Roberts rejected claimant's assertion that specific jobs the vocational expert identified were beyond claimant's reasoning ability. Claimant does not argue that Judge Roberts erred in any of these conclusions. Rather, claimant's argument rises or falls on the initial premise that the ALJ must have intended to impose a Level 1 reasoning limitation. Given that claimant's premise is erroneous, Judge Roberts' subsequent analysis remains sound.

Thus, the Court overrules claimant's objection to this part of Judge Roberts' R&R.

### D. *Appointments Clause Challenge*

Claimant argues that Judge Roberts should have found, in light of the United States Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), that the ALJ was an inferior officer not appointed in a constitutional manner, and, accordingly, claimant alleges that she is entitled to a new hearing before a properly appointed ALJ. (Doc. 17, at 5-8). Claimant did not raise the Appointments Clause issue before the ALJ or during her request for review by the Appeals Council.

The Supreme Court in *Lucia* stated "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177,

11

182-83, (1995)). In *Lucia*, the claimant "made just such a timely challenge: He contested the validity of [the presiding ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Id*. Since *Lucia*, this Court has addressed whether a social security claimant waives an Appointments Clause challenge by failing to raise the challenge before the ALJ or the Appeals Council. In each case, the Court has found that the claimant waived the argument by not raising it during the administrative proceedings. *See, e.g.*, *Vallecillo v. Saul*, No. 18-CV-2034-CJW-MAR, 2019 WL 4215125, at *3-4 (N.D. Iowa Sept. 5, 2019); *Sexton v. Saul*, No. C18-1024-LTS, 2019 WL 3845379, at *7-8 (N.D. Iowa Aug. 15, 2019); *Frazer v. Saul*, No. C18-2015-LTS, 2019 WL 3776996, at *4 (N.D. Iowa Aug. 12, 2019); *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR-KEM, 2019 WL 3752970, at *5-6 (N.D. Iowa Aug. 8, 2019) (report & recommendation); *Murphy v. Saul*, No. 18-CV-2037-CJW-KEM, 2019 WL 3502912, at *7-8 (N.D. Iowa Aug. 1, 2019); *Murphy v. Comm'r of Soc. Sec.*, No. 18-CV-61-LRR, 2019 WL 2372896, at *6-7 (N.D. Iowa Apr. 10, 2019); *Anderson v. Comm'r of Soc. Sec.*, No. 18-CV-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018).

Every other district court in the Eighth Circuit to address this issue has also found a Social Security claimant's Appointments Clause challenge raised for the first time on judicial review to be forfeited. *See, e.g.*, *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6-7 (D. Neb. Mar. 14, 2019); *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *14-15 (D. Minn. Feb. 15, 2019); *Audrey M.H. v. Berryhill*, No. 17-cv-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *Catherine V. v. Berryhill*, No. 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn.

Feb. 12, 2019); *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018).

This Court's decisions are also consistent with the vast majority of other district courts' decisions holding that a claimant waives or forfeits an Appointments Clause challenge made under *Lucia* by not raising the issue during the administrative proceedings. *See, e.g.*, *Morrow v. Berryhill*, No. C 18-04641 WHA, 2019 WL 2009303, at *3-4 (N.D. Cal. May 7, 2019); *Kline v. Berryhill*, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); *Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 779, 781 (E.D. Mich. 2019) (rejecting report and recommendation); *Diane S.P. v. Berryhill*, 379 F. Supp. 3d 498, 529 (E.D. Va. 2019) (adopting report and recommendation); *Velasquez ex rel. Velasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2–3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (E.D. La. Jan. 2, 2019); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019).

The Court finds no error in Judge Roberts' analysis. The Court is aware of non-binding contrary authority. Claimant has cited several district court decisions from four district courts in the Eastern District of North Carolina, the Eastern District of Pennsylvania, and the Middle District of Pennsylvania. (Doc. 12, at 15). Judge Roberts was also aware of the Third Circuit Court of Appeals' recent decision in *Cirko in re Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). (Doc. 16, at 39). The Court has also reviewed the supplemental authority claimant submitted, *Harwell v. Saul*, No. 4:18-cv-296-RGE-CFB (S.D. Iowa March 2, 2020), and *S.P.J. Wang v. Saul*, 0:18-cv-03144-DTS (D. Minn. Feb. 28, 2020). The Court also recognizes that consolidated cases of

*Davis v. Saul*, No. 18-3422, *Thurman v. Saul*, No. 18-3451, and *Iwan v. Saul*, 18-3452, are pending before the Eighth Circuit Court of Appeals on this issue as well.

Nevertheless, the out of circuit and out of district cases upon which claimant relies are not binding on this Court. The Court sees no reason to depart from its prior holdings on this issue and finds that claimant waived her Appointments Clause challenge by declining to raise the issue during the administrative proceedings. By declining to raise claimant's Appointments Clause challenge during the administrative proceedings, claimant did not make a "timely challenge" to the ALJ's appointment and, accordingly, waived the issue. Claimant's argument that it would have been futile to raise the issue below is unavailing to claimant's as-applied challenge and the Court declines to exercise its discretion under *Freytag v. Comm'r*, 501 U.S. 868 (1991), to excuse claimant's waiver here. Thus, the Court finds claimant waived her Appointments Clause argument.

Further, the Court declines claimant's request to stay entry of this Order until the Eighth Circuit addresses this issue on the pending consolidated appeal. Given the overwhelming support for this Court's ruling throughout the lower courts, such delay is not necessary.

## VII.  CONCLUSION

For these reasons:

1. Claimant's objections (Doc. 17) to the Report & Recommendation (Doc. 16) are **overruled**.

2. I **accept** the Report & Recommendation (Doc. 16) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Roberts' recommendation:

    a. The Commissioner's determination that claimant was not disabled is **affirmed**; and

14

b. Judgment will enter against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 4th day of March, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa